UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLETTE KNIGHT,

       Plaintiff,                      CIVIL ACTION NO. 14-CV-14513

vs.                                    DISTRICT JUDGE MATTHEW F. LEITMAN

                                            MAGISTRATE JUDGE MONA K. MAJZOUB

COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Colette Knight seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to Social Security benefits for her physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 10) and Defendant's Motion for Summary Judgment (docket no. 13). Plaintiff filed a Response to Defendant's Motion. (Docket no. 14.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 2.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and Recommendation.

**I.    Recommendation**

The undersigned recommends that Plaintiff's Motion for Summary Judgment [10] be GRANTED and that Defendant's Motion for Summary Judgment [13] be DENIED. This matter should be remanded for further discussion of Plaintiff's credibility and further analysis of her medical record and complaints as discussed herein.

1

## II. Procedural History

Plaintiff filed an application for Supplement Security Income with a protective filing date of April 11, 2012, alleging that she had been disabled since January 1, 2007, due to uterine fibroids, hearing loss, hypertension, asthma, degenerative join disease in her knees, and chronic back pain. (*See* TR 16, 115-27.) The Social Security Administration denied benefits. (*See* TR 16.) Plaintiff then requested a *de novo* hearing, which was held on July 31, 2013, before Administrative Law Judge (ALJ) John Dodson, who subsequently found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy. (TR 14-21.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

## III. Plaintiff's Testimony, Medical Evidence, and Vocational Expert Testimony

Plaintiff (docket no. 10 at 5-9) and the ALJ (TR 17-20) each set out a detailed factual recitation with regard to Plaintiff's medical record, the vocational expert's testimony, and Plaintiff's hearing testimony. Defendant adopts the ALJ's recitation of facts. (Docket no. 13 at 4.) As discussed herein, Plaintiff challenges the ALJ's findings, arguing that he mischaracterizes evidence and misinterprets her medical records. Having reviewed Plaintiff's medical record, the undersigned finds that there are no material inconsistencies between Plaintiff's recitation of facts and the record itself. Therefore, the undersigned will incorporate Plaintiff's statement of facts by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

**IV.     Administrative Law Judge's Determination**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 11, 2012, her application date, and that she suffered from severe uterine fibroids, bilateral sensorineural loss, hypertension, asthma, and degenerative joint disease of both knees. (TR 16.) The ALJ then found that her impairments did not meet or equal those listed in the Listing of Impairments. (TR 16-17.) The ALJ found, however, that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible and that Plaintiff had the residual functional capacity to perform light work with the following additional exceptions:

> [Claimant must] avoid concentrated exposure to loud noise; avoid hazards such as unprotected heights or moving machinery; [have] no concentrated exposure to humidity or extreme temperatures; [have] no concentrated exposure to pulmonary irritants, such as dust, odors, gases, fumes, or poor ventilation; and [perform] no work requiring production like-standards (sic).

(TR 17-20.) The ALJ then determined, in reliance on the VE's testimony, that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 20-21.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from April 11, 2012, through the date of her decision. (TR 21.)

**V.     Law and Analysis**

    **A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a

3

preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.  Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)  Plaintiff was not presently engaged in substantial gainful employment; and

(2)  Plaintiff suffered from a severe impairment; and

(3)  the impairment met or was medically equal to a "listed impairment;" or

(4)  Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

4

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.    Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL

5

2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff asserts that this matter should be reversed or remanded because the ALJ failed to properly consider Plaintiff's knee issues, hearing loss, or angina when determining her RFC. As part of her argument, Plaintiff contends that the ALJ failed to perform a proper credibility analysis, misinterpreted evidence, and improperly applied Plaintiff's medical records. (Docket no. 10.)

### 1.     The ALJ's Credibility Determination

As a continuing theme throughout her brief, Plaintiff contends that the ALJ failed to properly credit her allegations of limitations related to her physical impairments, with a specific focus on her knee pain, hearing loss, and angina-related chest pain. As discussed further, *infra*, Plaintiff argues that the ALJ erred when he failed to account for any limitations related to these impairments after finding them to be severe at Step 2. Additionally, though, Plaintiff argues that to the extent the ALJ found that her allegations lacked credibility, he improperly relied only on a lack of objective evidence in making this determination. (*See* docket no. 10.)

"An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's

6

allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); s*ee also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Plaintiff argues that the ALJ impermissibly relied on only the lack objective medical evidence when discrediting her testimony. Moreover, Plaintiff contends, the ALJ ignored her complaints of pain following injections in her knees; he failed to acknowledge that although her hearing would have improved with hearing aids, she only had one hearing aid because she could not afford to purchase them; and he failed to consider that although her chest pain was reduced with nitroglycerine, she had to rest for 20 minutes after taking her pills before they would take effect. (Docket no. 10 at 13, 15, 17.) Defendant argues that the ALJ did not err because a lack of objective evidence is a proper consideration; he also considered the effect of Plaintiff's medication

7

on her impairments, as required; that Plaintiff's single hearing aid was sufficient based on the record evidence; and that Plaintiff provided no evidence to suggest that she needed to take 20-minute breaks related to her taking nitroglycerine. (Docket no. 13 at 10-11, 12-13, 14-15.)

In his opinion, the ALJ states, "The objective medical evidence does not fully corroborate the claimant's testimony regarding the extent of her limitations." (TR 18.) And although he mentions that her testimony is not credible "for the reasons explained in this decision," he does not set forth those reasons. (*See* TR 17-20.) Defendant correctly points out that the ALJ referred to exhibits wherein Plaintiff complained of knee pain following her injection, that Plaintiff appears to have the ability to understand conversational speech with one hearing aid, and that Plaintiff did not provide any evidence aside from her own testimony that she had to take a 20-minute break after taking nitroglycerine. But it is the ALJ's rationale that is on review, not Defendant's; thus, Defendant's post-hoc rationalization is inapposite. *See Christephore v. Commissioner of Social Sec.*, No. 11-13547, 2012 WL 2274328, *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision. The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence. Moreover, it is the ALJ's rationale that is under review, not defense counsel's."). Even if the ALJ's decision is ultimately supported by substantial evidence, his decision is not sufficiently specific to make clear the reasons he discounted Plaintiff's testimony. And without that rationale, the Court cannot determine if the ALJ properly considered all of the evidence before him. Therefore, Plaintiff's Motion should be granted, and this matter should be remanded for a property discussion of Plaintiff's credibility.

    **2.**    **Plaintiff's Knee Pain, Hearing Loss, and Angina**

In the context of the ALJ's credibility determination, Plaintiff primarily argues that the ALJ also failed to properly consider the evidence with regard to her knee pain, hearing loss, and angina-related chest pain. (Docket no. 10.) Plaintiff notes that the ALJ found that all three impairments were severe—meaning that they "significantly limit[ her] ability to perform basic work activities, 20 CFR §§ 416.920, 416.921—but failed to then account for any limitations related to these severe impairments.

With regard to her knee pain, Plaintiff notes her continuing complaints of bilateral knee pain to her treating physician, Dr. Ellison, including complaints of pain after she received a Kenalog injection. (Docket no. 10 at 12-13.) Plaintiff argues that instead of considering the evidence, the ALJ relied on the opinion of a state agency consultant, but that consultant did not have any of the records from Dr. Ellison. (*Id.* at 13.) Plaintiff claims that because a limitation to "light work" requires "a good deal of walking or standing," a consideration of Plaintiff's knee pain was critical. (*Id.* at 11 (quoting SSR 83-10).) Moreover, Plaintiff alleges, while the ALJ continually noted that her examinations were "normal," such was not the case. (*See* docket no. 14 at 5-6.)

With regard to her hearing loss, Plaintiff argues that the ALJ summarily dismissed her allegations of hearing problems by improperly determining that he hearing loss was corrected with the use of hearing aids. Plaintiff impliedly acknowledges that her hearing may be improved through the use of two properly fitted and properly calibrated hearing aids, but she notes that the only hearing aid she was able to procure was through the help of the Lion's club, which she testified "did not work too well." (Docket no. 10 at 7-8, 14-15.) Plaintiff argues, however, that the main problem was the ALJ's failure to even acknowledge that she only had one hearing aid and

9

his continued reference to hearing "aids" throughout his decision and his finding that they significantly improve her hearing. (*Id.* at 14-16 (citing TR 17-20).) Plaintiff also notes that in reaching this determination, the ALJ relied on records from her treating physician, but "there is no indication that the treating physician ever saw plaintiff after she got even that solitary hearing aid." (*Id.* at 15.)

Finally, with regard to her angina, Plaintiff argues that the ALJ entirely ignored her cardiac symptoms by incorrectly finding that all of her examinations were "normal" or "negative." Plaintiff contends that her examinations were not normal, as evidenced by a mildly ischemic target heart rate, a decrease in exercise functional capacity, and her prescription for nitroglycerine tablets. (*Id.* at 16-17.)

It is axiomatic that an ALJ need not discuss every piece of evidence in the record. *Kornecky v. Comm'r*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) (citation omitted). And as Defendant notes, a finding that an impairment is severe does not necessarily result in a finding of related functional limitations. (Docket no. 13 at 6 (citing *Courtney v. Colvin*, No. 13-72, 2014 WL 320234, at *4 (D. Me. Jan. 29, 2014)).) Nevertheless, the undersigned agrees with Plaintiff. The evidence and considerations raised by Plaintiff more than trigger a reference to the ALJ's zone of choice. Although Defendant's arguments with regard to why Plaitniff's RFC is supported by substantial evidence are sound, the ALJ's failure to discuss Plaintiff's Kenalog injections or her subsequent pain; his failure to discuss the status of her hearing loss without two hearing aids or her continued complaints related thereto; and his misstatements with regard to her cardiovascular examinations, coupled with a lack of any mention of her nitroglycerine or its related effects, call into question whether the ALJ even considered this information. Therefore, this matter should be

remanded for further discussion and determination.

## VI.     Conclusion

For the reasons discussed above, Plaintiff's Motion for Summary Judgment [10] should be GRANTED and Defendant's Motion for Summary Judgment [13] should be DENIED. This matter should be remanded for further discussion of Plaintiff's credibility and further analysis of her medical record and complaints as discussed herein.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 3, 2015  s/ Mona K. Majzoub  
MONA K. MAJZOUB  
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served on counsel of record on this date.

Dated: September 3, 2015  s/ Lisa C. Bartlett  
Case Manager